UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICIA DOHOGNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:20-cv-01228-GCS |
| TERMINAL RAILROAD | ) |
| ASSOCIATION, BRAD RAGLAND, | ) |
| ADAM MAHLANDT, MATT | ) |
| WHITNEY, JOE BENTRUP, and | ) |
| ANTHONY BRUNS, | ) |
| | ) |
| Defendants.[1] | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

On October 9, 2020, Plaintiff Patricia Dohogne brought suit against Defendants Terminal Railroad Association ("TRA"), Michael Dundas, Brad Ragland, Matt Whitney, Adam Mahlandt, Joe Bentrup, Anthony Bruns, and Jessica Kasten for claims related to her termination from her employment as a train dispatcher in September 2016. (Doc. 1, Exh. 1). Plaintiff filed an amended complaint on August 2, 2021. (Doc. 36). In her amended complaint, Plaintiff alleges that Defendants TRA, Whitney, Kasten, Ragland, Mahlandt, Bentrup, and Bruns terminated her employment on October 9, 2015 and failed to renew

---

[1] Plaintiff does not identify Michael Dundas as a defendant in the body of her amended complaint. *See* (Doc. 36). Accordingly, the Court considers this defendant voluntarily dismissed, as she states no claims against him. *See Raab v. Wendel*, Case No. 16-CV-1396, 2019 WL 1060856, at *2 (E.D. Wisc. Mar. 6, 2019)(finding that entities not named in the caption or body of the complaint are not defendants). Though Defendants argue the same is true of Matt Whitney, Plaintiff does identify Defendant Whitney and Defendant Kasten in the body of her complaint, which is sufficient for including them as defendants. *See id.*; (Doc. 36, p. 4, 5).

her employment on September 30, 2016. Plaintiff claims this was an act of retaliatory discharge after she reported evidence that the crew she worked with violated Federal Railroad Administration train signal rules. Accordingly, she brings a claim for retaliatory discharge against TRA (Count I). (Doc. 36). Plaintiff also asserts that Defendants TRA, Ragland, Mahlandt, Bentrup, and Bruns each intentionally caused Plaintiff severe emotional distress and damage to her reputation by suspending her without pay on July 18, 2015 and by firing her on October 9, 2015 (Count II, III, IV, V and VI). *Id.*

Defendants removed this case from the Madison County Circuit Court to this Court on November 12, 2020. (Doc. 1). Now before the Court is Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. 37). For the reasons delineated below, the motion to dismiss is **GRANTED.**

## FACTUAL ALLEGATIONS

Plaintiff is the primary caretaker of her daughter, a then-minor child suffering from Post-Traumatic Stress Disorder ("PTSD"). (Doc. 36, p. 2). In order to care for her daughter, Plaintiff provided transportation and care when her daughter suffered panic attacks and needed to see a psychologist. *Id.* Though Plaintiff needed to miss work to care for her daughter, she was also consistently promoted during her tenure with TRA. Throughout her twelve-year career with TRA, Plaintiff was promoted from switchperson, to conductor, to crest tower operator, to yardmaster, and finally to the rank of train dispatcher. *Id.* at p. 1. This position is the highest-paid position for craft employees on the railroad. *Id.*

In 2014, Plaintiff applied for leave under the Family Medical Leave Act ("FMLA") through her supervisor, Defendant Kasten. (Doc. 36, p. 2). Though Ms. Kasten approved her leave, she did not advise Plaintiff that her benefits would expire within a twelve-month period. *Id.*

On August 24, 2014, train dispatcher Christopher Calhoun filed a report with TRA officials regarding an unsafe recurring technical malfunction in the signal control system. (Doc. 36, p. 2). Nearly one year later, on June 13, 2015, Plaintiff observed evidence that a locomotive had been operated past a traffic control signal which had displayed a "stop" signal. *Id.* at 2-3. This malfunction could have resulted in a violation of the Federal Railroad Safety Act ("FRSA"); accordingly, Plaintiff contacted her immediate supervisor, Defendant Bruns, to inform him of the malfunction. *Id.* at p. 3. However, Defendant Bruns ordered the crew back to work regardless of the malfunction. *Id.*

Plaintiff reported this incident to the Federal Railroad Safety Administration ("FRA"), and as a result, was contacted by Defendant Bentrup shortly thereafter. (Doc. 36, p. 3). Defendant Bentrup emphasized to Plaintiff during this meeting that Defendant Bruns had not violated any FRSA regulations. *Id.* at p. 4. Nevertheless, approximately one week later, TRA suspended Defendant Bruns for a period of thirty days for the violation. *Id.*

On July 18, 2015, three days after Defendant Bruns returned from his suspension, Plaintiff requested time to care for her daughter under the FMLA. (Doc. 36, p. 4). During a hearing on this issue, Defendant Kasten testified under oath that another TRA

employee, whose name she could not recall, contacted her outside of normal hours to question Plaintiff's eligibility for FMLA benefits. *Id.* Shortly thereafter, on July 20, 2015, one of the defendants[2] suspended Plaintiff for sixty days for her failure to reapply for FMLA coverage when it had lapsed the previous month. *Id.* This suspension voided Plaintiff's right to collect special unemployment insurance that most railroaders carry. *Id.* at p. 5. No other TRA employee had been suspended for this infraction in the company's history. *Id.* Under TRA's Progressive Discipline Policy, Plaintiff's punishment would have been a verbal warning. *Id.*

Plaintiff accepted the discipline after her union representative warned her that TRA intended to permanently dismiss her if she attempted to exercise her contractual right to an investigation. (Doc. 36, p. 5). When she returned to work on September 21, 2015, TRA assigned Plaintiff to a portion of the railroad with which Plaintiff was unfamiliar. *Id.* at p. 6. On September 23, 2015, Plaintiff believed she observed a train control system failure; however, this belief was not accurate. *Id.* TRA disciplined Plaintiff for this error, and she was permanently fired on October 9, 2015. *Id.*

Plaintiff attempted to get her position back, but on September 30, 2016, TRA signed a four-year labor contract with the union representing train dispatchers at the company. (Doc. 36, p. 6). Plaintiff alleges that TRA drafted a specific contract provision which incentivized other members of the union to keep Plaintiff dismissed. *Id.* at p. 7. Paragraph two of the agreement included terms stipulating that dispatchers would receive cash

---

[2]   Plaintiff does not specify which defendant suspended her in her complaint.

payments of $10,000 in the fourth-year of the contract so long as Plaintiff did not return to employment at TRA. *Id.* If Plaintiff did return to work, dispatchers would receive only $1,000. *Id.*

Prior to filing suit in state court, Plaintiff also filed a complaint against TRA under the FRSA. (Doc. 37, p. 4 n.4). Under the FRSA, Plaintiff was entitled to a hearing before a United States Department of Labor Administrative Law Judge ("ALJ"). Plaintiff received a fully-adjudicated, four-day hearing through this remedy. *Id.* On May 27, 2020, the ALJ issued his decision and order in TRA's favor, finding that TRA did not retaliate against Plaintiff in violation of the FRSA when it suspended her, and later, terminated her employment. *Id.* Though Plaintiff filed a petition for review of the ALJ's decision with the United States Department of Labor Administrative Review Board ("ARB"), the ARB dismissed the appeal for failure to prosecute on June 11, 2021. *Id.* at p. 9 n.6.

## LEGAL STANDARDS

Defendants move to dismiss Count I of Plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), this Court determines whether a complaint includes enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). In order to satisfy this standard, the factual allegations within a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 554-555. For the purposes of evaluating a motion to dismiss, the

Court will assume the complaint's allegations are true, even if factually dubious. *Id*. *See also Warth v. Seldin*, 422 U.S. 490, 501 (1975)(noting that trial courts are to construe the complaint in favor of the complaining party).

Although courts are to evaluate the complaint in the light most favorable to the non-moving party, courts "need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(citing *Twombly*, 550 U.S. at 555; quoting FED. R. CIV. PROC. 8(a)(2)). Therefore, in ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)(citing *Iqbal*, 556 U.S. at 677-678). A complaint "must contain sufficient factual matter, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Id*. Nevertheless, at the pleading stage, general factual allegations of an injury arising from the defendant's conduct may be sufficient; the Court presumes that general allegations "embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 889 (1990).

Defendants also move to dismiss Counts II-VI of Plaintiff's first amended complaint under Illinois's two-year statute of limitations. The statute of limitations is an

affirmative defense, which is evaluated under the standard for a motion for judgment on the pleadings. When determining whether to dismiss a complaint on the basis of a defendant's affirmative defense, the appropriate standard to apply is outlined in Rule 12(c), rather than Rule 12(b). *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)(citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). Rule 12(c) governs judgment on the pleadings. *See* FED. R. CIV. PROC. 12(c). However, the standard for judgment on the pleadings under Rule 12(c) is the same as that outlined for a motion to dismiss under Rule 12(b). *See Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997). "When the existence of a valid affirmative defense is so plain from the face of the complaint" that there is no means for the plaintiff to state a claim, the Court may grant relief and dismiss the suit. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

## ANALYSIS

In their motion to dismiss, Defendants allege that Plaintiff's claim for retaliatory discharge must fail because there is an adequate, alternative remedial scheme available to her. (Doc. 37, p. 4). In the alternative, Defendants assert that Plaintiff's claim is barred by the FRSA's election of remedies clause and by both issue and claim preclusion. *Id*. at p. 6. As to Counts II-VI, Defendants rely on the affirmative defense of the statute of limitations to dismiss Plaintiff's claims for intentional infliction of emotional distress ("IIED"). *Id*. at p. 10.

**I.     Whether an Alternative Remedial Scheme is Available for Plaintiff's Retaliatory Discharge Claim**

"The tort of retaliatory discharge was not intended to serve as a substitute means for enforcement of particular laws." *Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1140 (Ill. App. Ct. 2000). Illinois courts are concerned with ensuring that some remedy is available to deter conduct contrary to public policy; if that remedy is available by statute, then common law remedies are excessive and redundant. *See, e.g.*, *Zwick v. Inteliquent, Inc.*, 83 F.Supp.3d 804, 809 (N.D. Ill. 2015)(dismissing a retaliatory discharge claim where Sarbanes-Oxley provided a remedy for the same underlying conduct and expressly prohibited bringing an additional common law claim) (internal citations omitted). The existence of an "adequate alternative remedy" is therefore one of the factors a court considers in deciding whether to allow a retaliatory discharge claim. *Stebbings*, 726 N.E.2d at 1140. *See also Brandon v. Anesthesia & Pain Management Associates, Ltd.*, 277 F.3d 936, 943 (7th Cir. 2002)(applying Illinois law).

Defendants assert that an adequate, alternative remedy exists for Plaintiff's common-law retaliatory discharge claim under the FRSA, 49 U.S.C. § 20109. (Doc. 37, p. 5). The FRSA provides protections for railroad carrier employees and prohibits discharging an employee for providing "information . . . regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule or regulation relating to railroad safety or security . . . if the information or assistance is provided to or an investigation stemming from the provided information is conducted by . . . a Federal . . . law enforcement agency." 49 U.S.C. § 20109(a)(1)(A). Any employee

who alleges discharge in violation of the FRSA may "seek relief in accordance with the provisions of this section . . ." to be initiated by filing a complaint with the Secretary of Labor. 49 U.S.C. § 20109(d). Available remedies are "all relief necessary to make the employee whole[,]" including reinstatement with the same seniority status; any backpay, with interest; and compensatory and punitive damages. 49 U.S.C. § 20109(e). However, in order to obtain relief under this statute, a plaintiff must commence the action "not later than 180 days after the date on which the alleged violation" occurred. 49 U.S.C. § 20109(d)(2)(A)(ii).

Where there is even slight doubt that an alternative remedy does not apply to a particular plaintiff, that remedy is not an adequate alternative which would render a common-law retaliatory discharge complaint superfluous. *See United States ex rel. Rockey v. Ear Institute of Chicago, LLC*, 92 F. Supp.3d 804, 829 (N.D. Ill. 2015). In *Rockey*, the defendant alleged that the plaintiff, who had been fired for reporting suspected Medicare fraud, had an adequate alternative remedy through the False Claims Act ("FCA"). *Id.* at 828. The defendant relied on another district court case which predicted that Illinois courts would not recognize the tort of retaliatory discharge due to the remedies present in the FCA. *Id.* (citing *United States ex rel. Chandler v. Hektoen Institute for Medical Research*, 35 F. Supp.2d 1078, 1083 (N.D. Ill. 1999). The *Rockey* court, however, noted that the Seventh Circuit undermined that prediction in *Brandon*, wherein it stated that such a finding would extinguish the "whistle-blower" claim of retaliatory discharge under Illinois law. *Id.* at 828-829 (citing *Brandon*, 277 F.3d at 943). The *Rockey* court, then relied on a Seventh Circuit case, which stated in dicta that the FCA *might* be an adequate,

alternative remedy for a similar plaintiff in light of a recent amendment to the FCA. *Id*. at 829 (citing *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 847-848 (7th Cir. 2012)). Because it was "unclear" as to whether an adequate remedy existed under the FCA, the Court found that the plaintiff could proceed on her retaliatory discharge claim. *Id*. *See also Howell v. BNSF Railway Company*, 14 C 9977, 2015 WL 3528237, at *4 (N.D. Ill. June 4, 2015)(noting that there "remained a residual doubt – admittedly slight, but a doubt nonetheless – whether reporting misconduct to internal supervisors [wa]s protected by the FCA's amended anti-retaliation provision.").

Permitting a plaintiff to proceed on a retaliatory discharge claim where there is even a slight chance that the plaintiff may not have alternative remedies protects the public policy goals outlined in the common-law tort. Unlike criminal statutes, which "ensur[e] to the benefit of the State," the civil remedies outlined in common-law retaliatory discharge "alleviate the plight of those employees who are threatened with retaliation and forgo their rights." *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978). The tort is also designed to deter employers from risking the threat of lesser sanctions in order to engage in retaliatory discharge. *Id*. Furthermore, even if an alternative remedy exists, the "Illinois Supreme Court looks at this fact" not as dispositive, but as "one of many factors in the pragmatic approach toward determining when the tort of retaliatory discharge will lie." *Brandon*, 277 F.3d at 945.

Though similar, the FRSA and retaliatory discharge tort remedies share one significant difference. Whereas a retaliatory discharge claim carries a five-year statute of limitations, *see Henon v. Lever Bros. Co.*, 449 N.E.2d 196, 197 (Ill. App. Ct. 1983), a plaintiff

must bring a claim under the FRSA within 180 days. *See Howell*, 2015 WL 3528237, at *4. The difference in the statute of limitations, however, is of no import in determining whether an adequate alternative remedy exists as the Plaintiff originally pursued her claim under the FRSA before filing suit in state court.

When evaluating whether the FRSA is an adequate, alternative remedy to retaliatory discharge, the pertinent question is therefore "whether the FRSA's remedial scheme, considered together with other factors, is sufficiently strong to warrant rejecting" the retaliatory discharge claim in this case. *Shaffer v. National R.R. Passenger Corp.*, No. 11 C 970, 2011 WL 4916493, at *3 (N.D. Ill. Oct. 17, 2011). Here, the Court finds that the FRSA "is precisely the sort of 'adequate, alternative remedy' that would lead Illinois courts not to recognize [Plaintiff's] retaliatory discharge tort." *Howell*, 2015 WL 3528237, at *3 (internal citations omitted).The Court is persuaded by the district court's reasoning in *Howell* and believes it is applicable to the instant case.

In *Howell*, the plaintiff alleged that his employer violated Illinois common law by firing him in retaliation for reporting an on-the-job injury. 2015 WL 3528237, at *1. His employer moved to dismiss the plaintiff's common law retaliatory discharge claim arguing that the plaintiff failed to allege that his discharge violated public policy. *Id.* at *1-2. The plaintiff responded that his discharge violated statutory public policy as outlined in the Federal Rail Safety Act. *Id.* at *3. The district court, however, rejected the plaintiff's argument and granted his employer's motion to dismiss. *Id.* at *5. The court noted that one of the factors in determining whether to allow a retaliatory discharge claim was whether there was an "adequate alternative remedy." *Id.* at *3 (quotations and

citations omitted). The court reasoned that the FRSA did provide for an adequate alternative remedy because it offered comprehensive relief, including attorneys' fees, to individuals who claimed they were discriminated against for notifying the railroad carrier of a work related injury. *Id.* at *3-4. The court further rejected the plaintiff's contention that the FRSA was not an adequate remedy because it could only protect those rights through an administrative proceeding, as opposed to a jury trial. *Id.* at *4. In doing so, the court relied on prior Supreme Court precedent finding that the absence of a jury as a fact finder was a neutral factor. *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n.19 (1979)). The key inquiry was whether the proceeding was fair and adequate, and because the Supreme Court had previously found that a prior SEC administrative proceeding met that standard, it stood to reason that a "jury-less FRSA proceeding" could as well. *Id.*

    Like *Howell*, the FRSA specifically provides Plaintiff with complete and comprehensive relief. In *Howell*, the FRSA protected an individual from retaliation for complaining about an on-the-job injury. Here, although the nature of the retaliation is different, it is still protected under the FRSA. As noted previously, the FRSA protects an individual from retaliation for reporting violations of any regulation relating to railroad safety or security, which is what Plaintiff did in the instant case. *See* 49 U.S.C. § 20109(a)(1)(A). Moreover, as the *Howell* court noted, the relief provided under the FRSA is even more comprehensive than under common law because the FRSA provides for the recovery of attorneys' fees. 2015 WL 3528237, at *4 (citing 49 U.S.C. § 20109(e)(2)(C)). Because the FRSA provides for a complete, comprehensive, and an arguably more

superior remedial scheme than that provided for under the common law, the Court finds it is appropriate to reject Plaintiff's common law retaliatory discharge claim. Count I is thus dismissed.

II. **Whether Plaintiff's Count I is barred under the FRSA's election of remedies clause, or barred by either claim or issue preclusion**

Even if the FRSA fails to provide an adequate, alternative remedy for retaliatory discharge, Plaintiff's Count I must still be dismissed because Plaintiff has already sought relief for this claim through an administrative body capable of issuing binding relief. The FRSA expressly forbids a plaintiff from seeking relief under both the FRSA and another law for the same acts. *See* 49 U.S.C. § 20109(f). Prior to filing this suit, Plaintiff sought relief against TRA under the FRSA.[3] (Doc. 37, Exh. A, p. 29-30). In both actions, Plaintiff alleges that TRA suspended and discharged her in retaliation for making an internal complaint regarding the June 13, 2015 stop signal incident. *See* (Doc. 36); (Doc. 37, Exh. A, p. 3-4, 5-12, 33-39). As Plaintiff first elected to pursue relief under the FRSA for these acts of alleged retaliation, she cannot now receive relief under Illinois common law by the clear text of the FRSA.

Plaintiff argues that she abandoned her claim when she filed suit in state court because she did not continue her appeal before the ARB. (Doc. 38, p. 4). The regulations to the FRSA stipulate that a plaintiff may bring an action at law in the appropriate United

---

[3] The Court may take judicial notice of administrative decisions without converting a motion to dismiss to one for summary judgment. *See, e.g., Opoka v. Immigration and Naturalization Serv.*, 94 F.3d 392, 395 (7th Cir. 1996)(noting that a court may take judicial notice of an administrative law judge's decision). *See also Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994)(holding that a district court may take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment).

States District Court when 210 days have passed since the filing of a complaint and there is no final order of the Secretary of Labor or their designee. *See* 29 C.F.R. § 1982.114(a). An ALJ's decision is only considered a final order of the Secretary if there is no timely petition for review before the ARB. *See* 29 C.F.R. § 1982.109(e). As Plaintiff filed a timely review before the ARB, there is no final decision from the Secretary in this case. (Doc. 37, p. 9 n.6).

However, Plaintiff's reliance on this regulation still fails. The regulations only permit a plaintiff to bring suit in a district court if "there is no showing that there has been a ***delay due to the bad faith*** of the complainant." 29 C.F.R. § 1982.114(a) (emphasis added). Plaintiff herself admits that she failed to obtain a final decision of the Secretary through appeal to the ARB because she abandoned her claim before the ARB in order to pursue relief in state court. (Doc. 38, p. 4).[4] In other words, Plaintiff did not receive a final decision of the Secretary because she purposefully evaded such a decision in order to have her case heard in another forum. The Plaintiff's dilatory conduct before the ARB and her evasive motive cannot be considered good faith without undermining the purpose of that requirement in the regulation. *See, e.g.*, *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 979 n.2 (7th Cir. 2010)(considering forum shopping as bad faith) (internal citations omitted). *See also Fennell v. Illinois Cent. R. Co.*, 987 N.E.2d 355, 360-361 (Ill. 2012)(stating that "[d]ecent judicial administration cannot

---

4   Even if this were not an indication of bad faith, the Court notes that Plaintiff first filed suit in *state* court, which is not permitted under the FRSA. In order for Plaintiff's argument to succeed, the Court would need to consider Defendants' decision to remove this case to federal court as if Plaintiff had filed suit in district court under the FRSA. Noting no argument as to why that is appropriate, the Court declines to do so.

tolerate forum shopping as a persuasive or even legitimate reason for burdening communities with litigation that arose elsewhere and should, in all justice, be tried there.").

Furthermore, Plaintiff's claim is also barred by the doctrines of both claim and issue preclusion. Claim preclusion is known as the doctrine of *res judicata*. It bars a plaintiff's complaint when: (i) the identity of the parties and (ii) the identity of the cause of action are the same between the first and second lawsuits, and (iii) the first suit concluded with a final judgment on the merits of the action. *See Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (internal quotations omitted). "Whether there is an identity of the cause of action depends on whether the claims comprise the same core of operative facts that give rise to a remedy." *Id.* In comparison, issue preclusion, also known as "collateral estoppel," bars a complaint when: (i) the issue sought to be precluded is the same as an issue in prior litigation, (ii) the issue was actually litigated in that litigation, (iii) the determination of the issue was essential to the eventual judgment, and (iv) the party against whom estoppel is invoked was fully represented in the prior action. *Adams*, 742 F.3d at 746 (internal citations omitted).

Both Plaintiff and TRA were parties in her administrative suit. Furthermore, Plaintiff's suit before the ALJ concerned whether TRA retaliated against her after she reported Defendant Bruns "running" a stop signal and when she attempted to take additional leave under the FMLA. The determination of this issue was central to the ALJ's decision as to whether TRA retaliated against Plaintiff. Likewise, here, the purpose of Plaintiff's suit is whether TRA retaliated against Plaintiff based on the same set of facts.

Plaintiff again argues that the ARB did not issue a decision on the merits, and as such, the ALJ's decision was not "final." (Doc. 36, p. 5). However, to adopt Plaintiff's reasoning would allow parties to sidestep the effect of the res judicata and collateral estoppel doctrines. This would allow parties to continuously litigate claims or issues that they already had a full opportunity to litigate so long as an appeal is not pursued. This result runs counter to the very purpose of the claim and issue preclusion doctrines. *See, e.g.*, *Adams*, 742 F.3d at 746 (noting that *res judicata* and collateral estoppel are intended to reduce repetitive litigation) (internal citations omitted). Accordingly, an order is considered "final" for preclusion purposes if it "ends the litigation and leaves nothing to be decided in the district court." *Edmonds v. Operating Engineers Local 139*, 620 F.Supp.2d 966, 973 (W.D. Wisc. 2009)(citing *Adams*, 874 F.2d at 394). As the ALJ considered the same operative facts and the same underlying issues in order to arrive at a decision in Plaintiff's case, both claim and issue preclusion serve to bar Count I from being heard before this Court.

### III. Whether Plaintiff's remaining claims are barred by Illinois's statute of limitations

Both the statute of limitations and the rules that are "an integral part of the statute of limitations," such as equitable estoppel, are treated as substantive for purposes of the *Erie* doctrine. *See Hollander v. Brown,* 457 F.3d 688, 694 (7th Cir. 2006). The Court therefore looks to Illinois law governing the statute of limitations for IIED claims. In Illinois, IIED is a form of personal injury; accordingly, the applicable statute of limitations is two years. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). As Plaintiff initiated her suit

approximately four years after the latest incident alleged in her amended complaint, her case is barred by the statute of limitations unless equitable estoppel applies. (Doc. 14, Exh. 1, p. 10).

Under Illinois law, the doctrine of equitable estoppel may suspend the statute of limitations during any period in which the defendant took specific, affirmative steps to prevent the plaintiff from suing. *See Hollander*, 457 F.3d at 694. For instance, when a defendant has "lulled" the plaintiff into delaying by promising not to raise the statute of limitations defense or by concealing necessary evidence, equitable estoppel may nevertheless permit that plaintiff to bring an otherwise untimely claim. *See Swann & Weiskopf, Ltd. v. Meed Associates, Inc.*, 711 N.E.2d 395, 401 (Ill. App. Ct. 1999); *Beynon Bldg. Corp. v. National Guardian Life Ins. Co.*, 455 N.E.2d 246, 252 (Ill. App. Ct. 1983). Though equitable estoppel is designed to prevent parties from "taking advantage of [their] own wrongdoing," *Neaterour v. Holt*, 544 N.E.2d 846, 851 (Ill. App. Ct. 1989), a plaintiff must show that the defendant misrepresented or concealed a material fact in order to apply equitable estoppel to the statute of limitations. *See Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000); *see also Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000).

Plaintiff does not allege that Defendants prevented her from timely bringing this claim. Instead, she asserts that she was diligently pursuing her claim through the FRSA administrative law process until June 11, 2021, when the ARB denied Plaintiff's appeal for failure to prosecute and that the statute of limitations should be tolled to account for that time. (Doc. 38, p. 5). However, as Plaintiff herself states, in order to "prevail on an equitable tolling claim, a plaintiff must show that 'she has been pursuing her rights

diligently, and . . . that some extraordinary circumstance stood in her way.'" (Doc. 38, p. 6)(citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Plaintiff does not explain how her exhaustion under the FRSA constitutes an extraordinary circumstance justifying equitable tolling in this case. Furthermore, Plaintiff herself admits that she had not been pursuing her rights diligently throughout the time it took the ARB to deny Plaintiff's appeal; instead, Plaintiff chose not to prosecute in order to take her case to state court. (Doc. 38, p. 5). Equitable tolling is not available when a plaintiff does not meet the statute of limitations due to his or her own dilatory conduct. *See, e.g.*, *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 562 (7th Cir. 1996)(noting that application of equitable tolling requires that the plaintiff demonstrate "reasonable diligence") (internal citations omitted). As Plaintiff intentionally failed to exercise reasonable diligence to exhaust her available remedies under the FRSA, equitable tolling is not available to her, and the statute of limitations bars Plaintiff's remaining IIED claims.

## CONCLUSION

For the above-stated reasons, the undersigned **GRANTS** Defendants' motion to dismiss. (Doc. 37). The Clerk of the Court is directed to enter judgment in favor of defendants and to close the case.

**IT IS SO ORDERED.**

**DATED: June 15, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.06.15 13:15:49 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**